## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BIANCA MCSWIGGAN, | No. 61138-4-II |
| Respondent, | |
| v. | |
| | UNPUBLISHED OPINION |
| RYAN MCSWIGGAN, | |
| Appellant. | |

VELJACIC, C.J. — Ryan McSwiggan appeals the trial court's order denying his petition to modify the parenting plan involving his two children, GM and CM, with his former spouse, Bianca McSwiggan. Ryan[1] alleges that the trial court erred in admitting hearsay evidence, not admitting his offered guardian ad litem (GAL) report, and not entering a new parenting plan after making adjustments to the original parenting plan. We affirm.

FACTS

I.     INITIAL PARENTING PLAN

The parties were married in 2016 and petitioned for dissolution in 2021. They have two children, GM (age 9) and CM (age 6).

The trial court entered a final parenting plan in 2022. The court designated Ryan as the primary residential parent with Bianca having one overnight every other week with the children.

---

[1] Because the parties share the same last name, we refer to them by their first names. No disrespect is intended.

The limitation on Bianca's residential time was based on the court's finding that she "had untreated mental health conditions that have interfered with her ability to parent." Clerk's Papers (CP) at 221. The court ordered that after Bianca had been enrolled in counseling for three months, her time would increase to two overnights every other week. After six months of counseling, her time would increase to Monday through Friday every other week. The court ordered Bianca to provide evaluation and compliance reports to the court monthly and that if she did not follow the evaluation and treatment requirements, her visitation would revert to supervised visits for a few hours on Saturdays and Sundays. Bianca filed a motion for reconsideration, which the court denied.

II.     TEMPORARY RESTRAINING ORDER

In December 2022, there was an altercation between the parties. On December 20, Ryan obtained a temporary restraining order against Bianca. The order restrained both parties from disturbing the peace of the other and restrained Bianca from assaulting, harassing, or threatening to use force against Ryan and/or the children.

The trial court noted on the order that Bianca had not filed compliance reports with the court as required in the parties' 2022 parenting plan. The court ordered that until the next hearing, the children would have supervised visits with Bianca two days per week for four hours. Ryan filed a petition to modify the parties' parenting plan based on Bianca's alleged failure to follow through with treatment. The parties later agreed to dismiss the modification matter.

III.    BIANCA'S OBJECTION TO RELOCATION

In June 2023, Ryan was discharged from the Army, which resulted in him moving from the military base at Joint Base Lewis-McChord (JBLM) to Lacey. In July 2023, Bianca filed an objection to the relocation. She alleged that Ryan moved with the children without giving her

2

proper notice. The court appointed the GAL from the parties' dissolution proceedings to evaluate whether relocation was in the children's best interest.

In the GAL's April 2024 report, the GAL noted that Bianca reported that she had filed compliance reports as required under the parties' parenting plan, but the GAL did not see any in the file. However, the GAL noted that she reviewed a letter from Bianca's therapist, Dr. R. Jason Katzenbach, that stated that Bianca was in compliance with treatment and there "were no concerns about her mental health." CP at 193. The GAL ultimately concluded that although Bianca participated in some counseling, she failed to complete all counseling requirements set forth in the parties' parenting plan.

The GAL further noted that Bianca had ongoing difficulties ensuring the children arrived at school on time. She noted that the school documented numerous tardies.

Regarding relocation, the GAL determined that Ryan, as the primary residential parent, was entitled to a presumption in favor of relocation and that the move was not a substantial distance from the prior residence.

The GAL recommended keeping Ryan as the primary residential parent but changing Bianca's residential schedule to minimize school-day transportation issues. The GAL proposed that Bianca have the children "Friday after school until return to school Monday" every other week to minimize Bianca's responsibility to arrive at school on time. CP at 211.

The GAL further recommended updated mental health and parental capacity evaluations, participation in co-parenting counseling and parenting classes, and equal parental access to the children's medical, mental health, and school records, along with restrictions against derogatory comments by either parent.

The trial court approved the relocation and found the move would not result in a change to the parenting plan because it was a local move. Neither party appealed this order.

III.    RYAN'S PETITION TO MODIFY PARENTING PLAN

In April 2024, Ryan petitioned for modification of the parties' parenting plan. He requested a major modification to halt Bianca's time, arguing the children's current living situation with her was harmful to their physical, mental, or emotional health based on Bianca's alleged failure to seek treatment for mental illness. He also requested a minor modification based on Biaca's alleged failure to comply with the parenting plan.

The trial court found there was adequate cause to set the matter for trial. The matter proceeded to a bench trial where the parties represented themselves pro se.

At trial, Bianca offered a 2024 letter from her psychologist, Dr. Shamyka Sutton. The letter was offered twice as both exhibit 1 and exhibit 5. Dr. Sutton's letter stated that in consulting with Bianca and Dr. Katzenbach, Bianca has "continued weekly treatment sessions and continued progression through treatment, while maintaining her stabilized mental health status since my evaluation with no reported issues or reoccurrence of symptoms." CP at 35. Dr. Sutton also stated that she performed a psychological assessment in 2022 of Bianca and it was their opinion that Bianca "has met the recommendation in the evaluation." CP at 35. Ryan objected to exhibit 1 as hearsay and that the exception for medical treatment under ER 803(2)(4) did not apply. The trial court agreed and excluded exhibit 1.

Binaca also submitted a 2024 summary of treatment from Dr. Katzenbach. Dr. Katzenbach stated that Bianca participated in therapy from April 2022 until March 2023. He noted that Bianca reported minimal psychological distress and demonstrated regular use of treatment skills. Dr. Katzenbach also noted that at a recent follow up with Bianca she "continues to endorse and report

4

low levels of psychological distress and continues to demonstrate knowledge and use of the above previously acquired skills." Ex. 3. There was no objection to this exhibit.

During trial, Ryan questioned Bianca and directed her to the 2024 GAL report. Ryan stated that he was referring to "Exhibit 108." Rep. of Proc. (RP) (Oct. 22, 2024) at 61. The trial court asked, "Are you offering that report?" RP (Oct. 22, 2024) at 61. Ryan responded, "I am." RP (Oct. 22, 2024) at 61. Questioning then continued with Ryan referencing the GAL report. The record does not show that the exhibit was admitted at this point.

At the conclusion of trial, during its oral findings, the trial court referenced exhibit 5 and stated that while the court had previously excluded the exhibit (apparently referring to the identical exhibit 1), it was now admitting it because "this exhibit was relevant to the discussion that was ongoing as to compliance."[2] RP (Oct. 31, 2024) at 67. The court stated, "I think it's important to have this report because there was much talk, both at trial and even the guardian ad litem about Dr. Sutton and what she was recommending. And also Dr. Katzenbach." RP (Oct. 31, 2024) at 67-68. The court found that the exhibit met the hearsay exception for statements relating to Bianca's treatment and admitted it.

The trial court denied Ryan's request for a major modification of the parenting plan, finding that "there has been no substantial change to the situation of the children or the parent who did not file the Petition." CP at 113 (emphasis omitted). The court also denied Ryan's request for a minor modification, finding "the situation of the children or a parent has not changed substantially." CP at 114. Under "Other findings" the court ordered that "[b]oth parents are to ensure the children arrive at school on time." CP at 115.

---

[2] Because there is customarily no opportunity to object during a trial court's ruling on a case, and Ryan had objected to this report previously, we conclude this error was preserved for appeal.

Under the section "Other Changes" on the order denying modification, the trial court ordered that Bianca would have the children from Friday to Tuesday every other week instead of the originally ordered Monday through Friday every other week. This schedule was very similar to the schedule recommended in the GAL report. The adjustment was to give Bianca fewer school days, which the court hoped would result in fewer school tardies. The court found that this adjustment was necessary "[b]ecause of a substantial change in one parent's/child's situation" and that the change was "in the children's best interest." CP at 116.

IV.    RYAN'S MOTION FOR RECONSIDERATION

Ryan moved for reconsideration. He argued, inter alia, that the adjustment to Bianca's residential time was a modification of the 2022 parenting plan that the trial court was precluded from making without a finding that there was a basis for a major or minor modification. The court denied the motion to reconsider concluding that it was permitted to make adjustments to the parenting plan. The court reiterated that it adjusted Bianca's days because it "lessened the number of days that [Bianca] would be responsible for dropping off the children at school . . . this is in the children's best interest." CP at 177.

Ryan appeals.

ANALYSIS

I.    EVIDENTIARY ERROR

Ryan contends that the trial court committed two evidentiary errors: admitting Dr. Sutton's 2024 letter and excluding the GAL's 2024 report. For the reasons set forth below, we agree with Ryan on the first error but disagree on the second.

A.     Dr. Sutton's Letter

Ryan first argues that the trial court erred in admitting Dr. Sutton's letter because it was inadmissible hearsay.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Jennings*, 199 Wn.2d 53, 59, 502 P.3d 1255 (2022). "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). A trial court also abuses its discretion if "'no reasonable person would take the view adopted by the trial court.'" *Jennings*, 199 Wn.2d at 59 (internal quotation marks omitted) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay statements are not typically admissible. ER 802

ER 803(a)(4) provides that a statement is excepted from the hearsay rule where it was "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The declarant's motive must be consistent with promoting treatment and not in anticipation of litigation. *See In re the Welfare of M.R.*, 200 Wn.2d 363, 379, 518 P.3d 214 (2022).

Here, the statement at issue, Dr. Sutton's letter, was an out-of-court statement made for the truth of the matter asserted and therefore hearsay. We are unpersuaded that it was made for the purpose of treatment. Instead, the letter appears to have been made for purposes of litigation. As

a result, the letter does not fall under the ER 803(a)(4) exception. Therefore, the trial court abused its discretion in admitting the letter. Nevertheless, the error was harmless.

We apply a harmless error analysis when a trial court allows inadmissible hearsay. *State v. Templeton*, 148 Wn.2d 193, 200, 59 P.3d 632 (2002). A nonconstitutional error "requires reversal only if there is a reasonable probability that the error materially affected the outcome of the trial." *State v. Kindell*, 181 Wn. App. 844, 853, 326 P.3d 876 (2014).

Here, there is not a reasonable probability that the error materially affected the outcome of the trial. The inadmissible hearsay was minimal and cumulative of Dr. Katzenbach letter, which was admitted without objection. Dr. Katzenbach was Bianca's treatment provider in 2024. Dr. Sutton discussed in part a 2022 evaluation, so Dr. Sutton's opinion involved less recent information. Accordingly, Ryan was not prejudiced by any error in admitting Dr. Sutton's letter.

B.      GAL Report

Ryan next argues that the trial court erred by excluding the 2024 GAL report. But Ryan does not suggest what the remedy would be for this alleged error.

We will reverse an evidentiary ruling only if it results in prejudice. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). Here, while Ryan was questioning Bianca, Ryan directed her to the GAL report. Ryan stated that he was referring to "Exhibit 108." RP (Oct. 22, 2024) at 61. The trial court asked, "Are you offering that report?" RP (Oct. 22, 2024) at 61. Ryan responded, "I am." RP (Oct. 22, 2024) at 61. The trial court did not expressly admit the exhibit, but questioning then continued with references to the GAL report. Even assuming the trial court did not formally admit the report, Ryan does not explain how this affected the outcome of the proceedings. Without argument regarding any potential prejudice, we decline to address this issue further.

II.    NEW PARENTING PLAN

Ryan contends the trial court erred by making adjustments to the parties' parenting plan without entering a new parenting plan.  We disagree.

Under the section "Other Changes" on the order denying modification, the trial court expressly ordered that Bianca would have the children from Friday to Tuesday every other week instead of the originally ordered Monday through Friday every other week.  Ryan does not assign error to the basis for this adjustment; rather, he appears to challenge the form of the court's order.  However, he provides no legal authority for his proposition that a trial court must complete a new parenting plan form when ruling on an adjustment, rather than memorializing its decision in another form of order.  *See* RAP 10.3(a)(6) (parties must include argument in support of the issues presented "together with citations to legal authority").  Without regard to whether we agree with the court's practice here, we decline to consider this issue further.  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

CONCLUSION

We affirm.[3]

---

[3] Ryan also alleges in the assignment of error section of his brief that the trial court failed "to apply the plain meaning of Judge Henderson's Order Denying Revision" regarding the 2022 parenting plan.  Br. of Appellant at 1. But he does not dedicate a portion of the argument section of his brief to explain this assignment of error as required under RAP 10.3(a)(6).  Without more, we do not address this issue further.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, C.J.

We concur:

Glasgow, J.

Che, J.